## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 12 2016, 8:50 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James L. Harness, IV<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 12, 2016<br><br>Court of Appeals Case No.<br>15A01-1508-CR-1153<br><br>Appeal from the Dearborn<br>Superior Court<br><br>The Honorable Jonathan N.<br>Cleary, Judge<br><br>Trial Court Cause No.<br>15D01-0804-FB-5 |

**Bradford, Judge.**

## Case Summary

[1] In 2008, Appellant-Defendant James Harness pled guilty to Class B felony operating a vehicle while intoxicated ("OWI") causing death. Harness was given a twenty-year sentence with eight years suspended to probation. Harness was released from incarceration in February 2015. A condition of Harness's probation was that he not consume alcohol. In June 2015, Harness took a routine urine screen which revealed the presence of alcohol metabolites. As a result, Appellee-Plaintiff the State of Indiana filed a motion to revoke Harness's suspended sentence. The trial court found that Harness violated his probation by consuming alcohol, revoked six years of Harness's suspended sentence, and added an additional year of probation. On appeal, Harness claims that there was insufficient evidence to prove that he consumed alcohol. We affirm.

# Facts and Procedural History

[2] On December 21, 2007, Harness was a driving a borrowed Jeep Wrangler when he lost control of the vehicle and struck a tree. Bryan Morgan, one of the four passengers, was thrown from the vehicle and died as a result of his injuries. The remaining three passengers suffered only minor injuries. Harness fled the scene following the accident.

[3] The remaining passengers informed police that they had been drinking prior to the accident and that Harness had been driving ninety miles per hour and ignored their pleas to slow down. Seven hours after the crash, Harness was submitted to a portable breathalyzer test which indicated that his blood alcohol

level was 0.088%. Harness did not have a valid license and had been convicted of an OWI the previous year.

[4] On July 2, 2008, Harness pled guilty to Class B felony OWI resulting in death with a prior OWI conviction. The trial court sentenced Harness to a twenty-year term with eight years suspended to probation. Harness was released from the Department of Correction in February 2015. On June 15, 2015, Harness's probation officer performed a urine screen on Harness which revealed the presence of alcohol. The State subsequently filed a motion to revoke Harness's suspended sentence.

[5] At a fact finding hearing, the State presented testimony from Steve Kelly, Chief Probation Officer of the Dearborn Superior Courts, about the failed screen. The State also submitted an affidavit from Jeff Retz, the Scientific Director and Certifying Scientist at Witham Memorial Hospital Toxicology Laboratory, who tested Harness's urine sample. Retz opined that, based on the urinalysis, Harness had consumed alcohol within the five days prior to the screen. Harness claimed that the test results were a false positive. The trial court found that Harness had violated his probation by consuming alcohol, revoked six years of Harness's suspended sentence, and added one year of probation.

# Discussion and Decision

[6] On appeal, Harness claims that the State failed to present sufficient evidence to prove by a preponderance that he violated his probation by consuming alcohol.

Specifically, Harness argues that the urine screen was unreliable because (1) the State failed to present evidence regarding the specific manner in which the sample was collected and (2) that the procedure used to test Harness's urine is not scientifically reliable.

[7]
> Because a probation hearing is civil in nature, the State must prove the alleged probation violation by a preponderance of the evidence. *Braxton v. State*, 651 N.E.2d 268, 270 (Ind.1995), *reh'g denied*; *see* Ind. Code § 35-38-2-3(e). In reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Braxton*, 651 N.E.2d at 270. Instead, we consider only the evidence most favorable to the trial court's decision to revoke probation. *Id*. We will affirm when there is substantial evidence of probative value to support the court's conclusion that a probationer has violated any condition of probation. *Id*.

*Johnson v. State*, 692 N.E.2d 485, 486 (Ind. Ct. App. 1998).

[8]   At the revocation hearing, the State submitted the affidavit of Jeff Retz, who tested Harness's urine sample for the presence of ethyl glucuronide ("ETG"), a metabolite produced as a result of ingesting alcohol. Retz outlined the procedure which was used to transfer and analyze the sample and avowed that all proper steps were taken with Harness's sample. Bases on Harness's ETG levels, Retz opined that "Harness [] would have had to use or ingest a substance containing ethyl alcohol sometime in the five days prior to the urine collection." Ex. 1. Retz also indicated that the sample was sent for confirmation testing to a separate laboratory in Kansas. Retz attached the

affidavit of Dr. David Kuntz to his own affidavit in which Kuntz, the director of the Kansas laboratory, confirmed Harness's positive ETG screen.

[9] Steve Kelly testified that, at the time of the urine screen, Harness had moved to Switzerland County, was under courtesy supervision in that county, and that the urine sample was collected by a certified Switzerland County probation officer. Kelly also testified that, to the best of his knowledge, "all procedures and processes were followed" in the collection of Harness's urine sample. Tr. p. 19.

[10] First, Harness argues that "[t]he record lacks evidence to show that Harness's sample had been collected and stored in the proper manner." Appellant's Br. p. 11. However, Harness does not describe what proper collection procedure might be, how the probation officer in this case may have failed to follow such procedure during the collection process, and how any such failure could lead to a false positive. We are unpersuaded by Harness's attempts to generally cast doubt on the collection procedure without any specific claims of deficiency.

[11] Harness goes on to generally question the reliability of ETG testing, arguing that the testimony here does not "rest[] upon reliable scientific principles" as is required by Indiana Evidence Rule 702. Despite Harness's contentions with the accuracy of the ETG test, the only scientific evidence presented were the affidavits of Retz and Kuntz, in which Retz opined that the results of Harness's urine indicated that he consumed alcohol in the previous five days. These expert affidavits stand as an endorsement of the reliability of the ETG test.

Harness offered no expert testimony that may have given the trial court reason to question the validity of ETG testing. Absent such evidence, we find that the results of the ETG testing are sufficient to sustain the trial court's conclusion that Harness consumed alcohol in violation of the terms his probation.

[12] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.